UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELLONDIE BENSON, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | 1:14-cv-01039-JMS-TAB |
| | ) | |
| RCM PHOENIX PARTNERS, LLC, MARION | ) | |
| COUNTY SHERIFF'S DEPARTMENT, and JOHN | ) | |
| R. LAYTON, *Marion County Sheriff,* | ) | |
| *Defendants.* | ) | |

## ORDER

Presently pending before the Court are: (1) Defendants Marion County Sheriff's Department's[1] and Marion County Sheriff John R. Layton's (collectively, "Sheriff Defendants") Motion for Summary Judgment, [Filing No. 62]; (2) Defendant RCM Phoenix Partners, LLC's ("RCM") Motion for Summary Judgment, [Filing No. 70]; and (3) Plaintiff Mellondie Benson's Request Under Circuit Rule 52 to Certify a Question, [Filing No. 87].

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

---

[1] Marion County Sheriff's Department states in its Motion for Summary Judgment that it is incorrectly named, and that its proper name is "Marion County Sheriff's Office." [Filing No. 62 at 1.] Since Plaintiff is "the master[] of the complaint," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002), Defendants cannot unilaterally decide which entities are the "proper" defendants. Accordingly, the Court refers to that entity as it is named in the case caption.

asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary

judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, as supported by proper citation to admissible evidence in the record and viewed in the light most favorable to Ms. Benson:

On January 21, 2013, Ms. Benson went to visit her mother, who lived in an apartment at the Keystone North Apartments in Indianapolis, Indiana ("Keystone").  [Filing No. 69-1 at 9.][2] Keystone had been threatening to evict Ms. Benson's mother and terminate her United States Department of Housing and Urban Development ("HUD") assistance, so Ms. Benson accompanied her mother to Keystone's business office in hopes of resolving the issue.  [Filing No. 69-1 at 9-10.]  When Keystone management asked Ms. Benson's mother to sign a back-dated document, she refused and she and Ms. Benson returned to the apartment.  [Filing No. 69-1 at 10.]

Ms. Benson's mother returned to the business office alone later that same day, requesting a copy of her lease.  [Filing No. 69-1 at 10-11.]  When Ms. Benson's mother returned to her apartment, she told Ms. Benson that Andrew Swinkowski, a manager at Keystone, had been rude to her and had told her to get out of his office.  [Filing No. 69-1 at 11.]  Also that same day, Ms. Benson

---

[2] RCM states that it "is a company doing business as [Keystone]."  [Filing No. 71 at 2.]

went back to the business office alone, requesting documentation on behalf of her mother from Mr. Swinkowski. [Filing No. 63-4 at 21-22.] When Mr. Swinkowski refused to provide the documents, Ms. Benson "became irate and started to yell…." [Filing No. 63-4 at 22.][3]

Shortly thereafter, Mr. Swinkowski told two security guards working at Keystone that Ms. Benson had been in his office and was being "disruptive, causing issues, yelling and screaming at him, demanding things…." [Filing No. 63-3 at 7.] Specifically, Ms. Benson was demanding documents, but Mr. Swinkowski did not think she was not entitled to those documents because she was not on the apartment lease. [Filing No. 63-4 at 7.] Mr. Swinkowski then asked the two security guards that were working security at Keystone to place Ms. Benson's name on Keystone's "trespass list," meaning that she would not be authorized to come on Keystone's property and could be arrested for trespassing if she did so. [Filing No. 63-3 at 5-7; Filing No. 63-4 at 8-9.]

The two security guards then went to Ms. Benson's mother's apartment and knocked on the door. [Filing No. 69-1 at 11-12.] The security guards were off-duty Marion County Sheriffs, and were wearing Marion County Sheriff uniforms, carried guns, and wore bulletproof vests. [Filing No. 63-3 at 5.] The security guards asked Ms. Benson to accompany them to the Keystone security office, and she agreed. [Filing No. 69-1 at 11; Filing No. 69-1 at 35.] Once at the security

---

[3] The parties dispute how many times Ms. Benson went to the business office, and whether Ms. Benson became irate and started to yell during one of her encounters with Mr. Swinkowski. The Court has only considered statements that are supported by citations to the record. For example, Ms. Benson disputes that she was irate and yelled, but cites only to an excerpt from her deposition regarding Keystone's request that her mother sign backdated documents. While Ms. Benson may dispute that fact now – a fact supported by Mr. Swinkowski's deposition testimony – she has not cited any record evidence to contradict that fact. The Court must view the facts in the light most favorable to Ms. Benson, but she must support her version of the facts with citations to the designated evidence of record, and has not done so in this instance. Fed. R. Civ. P. 56(c)(1)(A). In any event, and as discussed below, Ms. Benson's claims do not rise or fall based on this fact, but rather on her failure to respond to Defendants' arguments and, in most cases, her concessions that her claims fail or her abandonment of her claims.

- 4 -

office, the security guards questioned Ms. Benson regarding whether she had been in an argument with Mr. Swinkowski. [Filing No. 69-1 at 12.] The security guards then asked Ms. Benson to sign a paper, but would not let her read the paper and would not explain why they wanted her to sign it. [Filing No. 69-1 at 12.] Ms. Benson would not sign the paper, and got up from her seat to leave the security office. [Filing No. 69-1 at 12.] One of the security guards then told Ms. Benson she could not leave the security office, put her back in her seat, and placed her in handcuffs. [Filing No. 69-1 at 12-13.] Ms. Benson was in handcuffs in the security office for between forty-five and fifty minutes while the security guards debated with each other whether to arrest her. [Filing No. 69-1 at 13-14.] The security guards then took the handcuffs off of Ms. Benson, and told her that she was being placed on the trespass list and could not be on the property, and that she had to leave the property within twenty to thirty minutes. [Filing No. 69-1 at 14; Filing No. 69-1 at 37.] Ms. Benson then went back to her mother's apartment to retrieve her belongings and to prepare to leave the property. [Filing No. 69-1 at 14; Filing No. 69-1 at 37-38.]

Ms. Benson did not make note of the time when she left the security office, but claims that she left her mother's apartment to exit the property within the twenty- to thirty-minute time frame. [Filing No. 69-1 at 15-16.] Just as she was leaving her mother's apartment, Mr. Swinkowski and the two security guards returned to the apartment, blocked Ms. Benson's exit, and the security guards arrested her for trespassing. [Filing No. 69-1 at 16-17.] The security guards claim that they arrested Ms. Benson for trespassing because forty-five minutes had elapsed since they had warned her to exit the property within twenty to thirty minutes. [Filing No. 63-3 at 13.] Thereafter, the Marion County Prosecutor brought charges against Ms. Benson for criminal trespass and resisting law enforcement, but those charges were eventually dismissed. [See Filing No. 17-5.]

Ms. Benson filed her original Complaint on June 23, 2014, [Filing No. 1], and the operative Second Amended Complaint on August 6, 2014, [Filing No. 17].  In the Second Amended Complaint, Ms. Benson appears to assert claims for violations of 42 U.S.C. § 1983, malicious prosecution, false imprisonment, and negligence against all Defendants.[4]  [Filing No. 17.]  The Sheriff Defendants filed their Motion for Summary Judgment on September 2, 2015, [Filing No. 62], and RCM filed its Motion for Summary Judgment the next day, on September 3, 2015, [Filing No. 70]. The Court will first address the Sheriff Defendants' motion.

### III.
### SHERIFF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, the Sheriff Defendants argue that Ms. Benson has failed to plead any federal claims upon which relief can be granted against them, and that her state law claims against them are barred by the Indiana Tort Claims Act.  [*See* Filing No. 65 at 6.]  The Court will address Ms. Benson's federal claims against the Sheriff Defendants first.

**A.  § 1983 Claims Against the Sheriff Defendants**

The Sheriff Defendants argue that when a complaint brought under § 1983 fails to specify whether a government official is being sued in his or her individual capacity, it is presumed that the plaintiff is alleging an official capacity claim only.  [Filing No. 65 at 6-7.]  The Sheriff Defendants assert that any § 1983 claim against Sheriff Layton in his official capacity would be duplicative of Ms. Benson's federal claim against the Marion County Sheriff's Department.  [Filing No. 65 at 7.]  They argue that Ms. Benson's only allegation regarding Sheriff Layton is that he "oversees" the Marion County Sheriff's Department and the deputies that work in the Marion County Sheriff's Department.  [Filing No. 65 at 7.]  Accordingly, the Sheriff Defendants argue,

---

[4] Ms. Benson originally named the City of Indianapolis in the Second Amended Complaint, but dismissed that entity by stipulation on May 29, 2015.  [Filing No. 56.]

Ms. Benson does not assert claims against Sheriff Layton in his individual capacity and, even if she did, those claims would fail because there is no respondeat superior liability under § 1983. [Filing No. 65 at 7.]  As to the Marion County Sheriff's Department, the Sheriff Defendants argue that Ms. Benson must allege that its policies, practices, or customs caused a constitutional violation, and she has not done so.  [Filing No. 65 at 10.]

In response, Ms. Benson does not specifically address the Sheriff Defendants' arguments, but instead apparently abandons her § 1983 claims against the Sheriff Defendants.  She states that she "sued the individual officers, but they have immunity under the Indiana Tort Claims Act; [and] she tried to sue the Sheriff's department for the lack of policies and procedures regarding deputies working off duty, but Indiana law necessitates that the Sheriff's department and the Sheriff himself be dismissed as they, too, have immunity."  [Filing No. 86 at 2.]  Ms. Benson also states that "[w]hile it is unjust to leave Plaintiff with no means of recourse against the officers who wrongful arrested her or the state agency who allowed its officers to be used as security force for corporate America, Plaintiff will respect the law and pray for future changes in it to protect people who end up being maliciously prosecuted for crimes they did not commit."  [Filing No. 86 at 2-3.]

On reply, the Sheriff Defendants point out that Ms. Benson never sued the individual officers involved in her arrest, nor did she assert a *Monell* claim against the Marion County Sheriff's Department, but rather advised the Magistrate Judge at a settlement conference that she sought to hold the Sheriff Defendants liable under a theory of respondeat superior.  [Filing No. 88 at 1.]

Ms. Benson does not specifically respond to the Sheriff Defendants' arguments regarding why her claims against them fail, and failure to respond to an argument constitutes waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  Additionally, Ms. Benson abandons those claims in her response brief.  [*See* Filing No. 86 at 2-3 (acknowledging the Sheriff Defendants'

Motion for Summary Judgment and stating "While it is unjust to leave Plaintiff with no means of recourse against the officers who wrongly arrested her or the state agency who allowed its officers to be used as security force for corporate America, Plaintiff will respect the law and pray for future changes in it to protect people who end up being maliciously prosecuted for crimes they did not commit").] Accordingly, the Court does not address Ms. Benson's § 1983 claims against the Sher-iff Defendants further, and the Sheriff Defendants are entitled to summary judgment on those claims as Ms. Benson has abandoned them.

### B.  State Law Claims Against the Sheriff Defendants

The Sheriff Defendants argue that Ms. Benson's state law claims against Sheriff Layton fail because they are duplicative of her state law claims against the Marion County Sheriff's De-partment. [Filing No. 65 at 8.] They also argue that her state law claims against both Sheriff Layton and the Marion County Sheriff's Department fail because Ms. Benson provided notice of her claims well outside the 180-day deadline provided in the Indiana Tort Claims Act, Ind. Code § 34-13-3-8, *et seq.* ("ITCA"). [Filing No. 65 at 11.] Finally, the Sheriff Defendants argue that Ms. Benson's state law claims fail in any event because: (1) Indiana law does not allow malicious prosecution claims against governmental entities and their employees; (2) there was probable cause to arrest Ms. Benson, so her false arrest/false imprisonment claim fails; and (3) the Sheriff Defendants are immunized from liability for negligence under the ITCA, and the negligence claim is duplicative of Ms. Benson's false arrest/false imprisonment claim. [Filing No. 65 at 12-15.]

In response to the Sheriff Defendants' arguments, Ms. Benson states that "[w]hile the sys-tem of circular and absolute immunity from malicious prosecution claims currently employed by Indiana law is patently unfair and should terrify all Hoosiers, it is for now the law. Plaintiff simply does not have the resources to continue this crusade." [Filing No. 86 at 2.] Ms. Benson also states

that she hopes the Indiana Supreme Court will "answer the following questions: 1. Is the statute of limitations for false arrest claims Ind. Code § 34-11-2-4 or Ind. Code § 34-11-2-6? 2. Does the filing of a criminal case by a prosecutor effectively bar malicious prosecution claims against persons – in particular police officers – who supplied the information that led to the prosecution?" [Filing No. 86 at 2.] On the same day that Ms. Benson filed her response to the Sheriff Defendants' Motion to Dismiss, Ms. Benson filed a Request Under Circuit Rule 52 to Certify a Question.  [Filing No. 87.] In her Request, Ms. Benson asks that the Court certify the following question to the Indiana Supreme Court:  "Whether the filing of a criminal case by a prosecutor effectively bars a malicious prosecution claim against persons (including police officers) who supplied information that led to the prosecution?" [Filing No. 87 at 1.]

On reply, the Sheriff Defendants argue that Ms. Benson relies upon the wrong procedural rule in her Request to Certify, and that the question she asks the Court to certify is "already well settled under Indiana law." [Filing No. 88 at 1.]

As with her § 1983 claims against the Sheriff Defendants, Ms. Benson does not respond to the Sheriff Defendants' arguments on the merits, and instead abandons her state law claims against them.  [*See* Filing No. 86 at 2-3 (stating that "it is unjust to leave Plaintiff with no means of recourse against the officers who wrongly arrested her or the state agency who allowed its officers to be used as security force for corporate America," but that she "will respect the law and pray for future changes in it to protect people who end up being maliciously prosecuted for crimes they did not commit").] Thus, Ms. Benson has waived any argument that her state law claims are viable, and the Sheriff Defend-ants are entitled to summary judgment on those claims as well.

In sum, Ms. Benson has waived any response to the Sheriff Defendants' arguments in support of their Motion for Summary Judgment, and the motion is **GRANTED** as to all of Ms. Benson's claims against the Sheriff Defendants.[5]

## IV.
### RCM's MOTION FOR SUMMARY JUDGMENT

### A.  Jurisdiction Over Ms. Benson's Claims Against RCM

In its Motion for Summary Judgment, RCM argues that Ms. Benson's § 1983 and state law claims fail for various reasons.  In response, Ms. Benson clarifies that she is not asserting § 1983 claims – or any federal claims – against RCM.  [Filing No. 85 at 6 ("To the extent that Plaintiff's Complaint is interpreted as seeking relief from RCM (in particular) pursuant to 42 U.S.C. § 1983, Plaintiff regrets the confusion, but takes this opportunity to clarify that she is only asserting state law claims against Defendant RCM").  Ms. Benson asserts, however, that "jurisdiction and venue remain proper because Plaintiff has asserted damages in excess of $75,000…and the parties are citizens of different states."  [Filing No. 85 at 6.]

In her Second Amended Complaint, Ms. Benson alleges only that she is a resident of Indiana, that RCM is a "Foreign Limited Liability Company" with its "entity address" in Connecticut and "property held locally" in Indiana, and that she seeks "damages in excess of $75,000.00…."

---

[5] In the conclusory paragraph of their reply brief, the Sheriff Defendants request their attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.  [Filing No. 88 at 2.]  The Sheriff Defendants make no attempt to justify an award of fees and costs, instead just making a conclusory statement that they are warranted.  The Court denies the Sheriff Defendants' drive-by request.  *See Bisciglia v. Kenosha United School Dist. No. 1*, 45 F.3d 223, 227 (7th Cir. 1995) ("a prevailing defendant must demonstrate that the plaintiff brought his action in subjective bad faith or that 'the plaintiff's action was frivolous, unreasonable, or without foundation even though not brought in subjective bad faith'"); *Coyne-Delany Co. v. Capital Dev. Bd. of Ill.*, 717 F.2d 385, 390 (7th Cir. 1983) ("an award of attorney's fees is proper…where the losing party has been guilty of bad faith, as by bringing a frivolous suit – frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win").

[Filing No. 17 at 2-3; Filing No. 17 at 10-13.]  These allegations are not sufficient to establish diversity jurisdiction for several reasons:

- Ms. Benson has not provided her citizenship – an allegation of residence is inadequate.  *See McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998).  Residency and citizenship are not the same, and it is the latter that matters for purposes of diversity.  *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002).

- Ms. Benson has not provided the citizenship of RCM, which is a limited liability company.  The citizenship of an unincorporated association is "the citizenship of all the limited partners, as well as of the general partner."  *Hart v. Terminex Int'l*, 336 F.3d 541, 542 (7th Cir. 2003).  The citizenship of an unincorporated association "must be traced through however many layers of partners or members there may be."  *Id.* at 543.

- Ms. Benson has not properly alleged that the amount in controversy exceeds $75,000 "exclusive of interest and costs," as required by 28 U.S.C. § 1332.

Generally, the Court would require the parties to provide more information regarding their respective citizenships and the amount in controversy before determining whether it has diversity jurisdiction.  However, the Court finds that it has supplemental jurisdiction over Ms. Benson's state law claims against RCM in any event, so need not inquire further into whether it also has diversity jurisdiction.  Specifically, the Court finds this to be a case where the factors of "judicial economy, convenience, fairness and comity" favor the exercise of supplemental jurisdiction.  *See Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015).  This case has been pending since 2014, and, following discovery, the parties have fully briefed a summary judgment motion which addresses all of Ms. Benson's state law claims against RCM.  Further, as discussed below, the issues related to Ms. Benson's state law claims are not novel and their resolution is guided by well-established Indiana law.  The Court finds that exercising supplemental jurisdiction over Ms. Benson's state law claims against RCM would promote judicial efficiency, convenience, fairness, and comity, and is appropriate here.  *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251

(7th Cir. 1994) ("Another occasion for retaining state-law claims occurs when 'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort'").

### B.  Malicious Prosecution Claim

In her Second Amended Complaint, Ms. Benson appears to base her malicious prosecution claim against RCM on the theory that the security guards were "acting as agents of Defendant RCM," and that their "unlawful arrest" of Ms. Benson constituted malicious prosecution.  [Filing No. 17 at 9.]  RCM argues that Ms. Benson's malicious prosecution claim fails as a matter of law because: (1) probable cause existed for her arrest; (2) she has not presented any evidence that RCM "instituted or caused to be instituted a prosecution against [her]"; and (3) she has not presented any evidence that the prosecution was conducted maliciously.  [Filing No. 71 at 9-12.]

Ms. Benson responds that there are genuine issues of fact regarding whether there was probable cause for her arrest.  [Filing No. 85 at 7-11.]  She also asserts that RCM does not have to have instituted her prosecution to be liable for malicious prosecution, although also notes that "[p]erplexingly, the Indiana Court of Appeals seems to have accepted Defendant's argument…." [Filing No. 85 at 11.]  Additionally, Ms. Benson contends that there are genuine issues of fact regarding the existence of malice.  [Filing No. 85 at 11-12.]  Finally, Ms. Benson appears to abandon her malicious prosecution claim against RCM, stating "It would be nice if it mattered that there are genuine issues of material fact regarding the existence of probable cause to arrest [Ms. Benson]…[or] whether RCM acted with malice when it caused to be instituted the criminal action against her…, but the sad fact of the matter is that it probably doesn't matter.  The foregoing discussion of the elements of malicious prosecution is entirely academic….[T]here is another line

- 12 -

of Indiana jurisprudence that is fatal to [Ms. Benson's] claims…[and that] does seem to be de-pressingly dispositive of the issues raised…." [Filing No. 85 at 12.] Ms. Benson cites a 2009 case from the Northern District of Indiana and states "[a]pparently, if an off-duty police officer is moon-lighting as a private security guard, but then arrests someone, he is transformed back into a public official, and his private employer is saved from liability for his misdeeds." [Filing No. 85 at 13.]

On reply, RCM argues that Ms. Benson has conceded that her malicious prosecution claim fails, and reiterates its arguments regarding the existence of probable cause for her arrest, and a lack of evidence that RCM instituted or caused to be instituted her prosecution, or that RCM acted with malice. [Filing No. 91 at 7-12.]

Although Ms. Benson appears to concede her malicious prosecution claim against RCM, the Court will address it given that she also sets forth arguments for why her claim is viable. Under Indiana law, "the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014), *cert. denied*. Malice may be shown "by evidence of personal animosity or inferred from a com-plete lack of probable cause or a failure to conduct an adequate investigation under the circum-stances." *Id.*

Ms. Benson's malicious prosecution claim fails as a matter of law because the security guards had probable cause to arrest her. Although Ms. Benson asserts her malicious prosecution claim against RCM, she does so based on a respondeat superior theory of liability and focuses on the security guards' actions. Accordingly, the first relevant inquiry is whether the security guards

had probable cause to arrest Ms. Benson.   The Court will assume, without deciding, that the se-

curity guards are properly considered RCM's agents, and that the security guards instituted or

caused to be instituted an action against Ms. Benson.[6]

Probable cause exists "'when a reasonably intelligent and prudent person would be induced

to act as did the person who is charged with the burden of having probable cause.'"  *City of New*

*Haven v. Reichhart*, 748 N.E.2d 374, 379 (Ind. 2001) (quoting *Maynard v. 84 Lumber Co.*, 657

N.E.2d 406, 409 (Ind. Ct. App. 1995)).  Under Indiana law, a person commits the offense of tres-

pass when "not having a contractual interest in the property, [she] knowingly or intentionally re-

fuses to leave the real property of another person after having been asked to leave by the other

person or that person's agent."  Ind. Code § 35-43-2-2(b)(2).

RCM sets forth evidence that the security guards were asked by Mr. Swinkowski to place

Ms. Benson on the trespass list, they told Ms. Benson they were placing her on the trespass list,

they told Ms. Benson she had thirty minutes to vacate the property or she would be arrested for

trespass, and they found Ms. Benson still on the property over thirty minutes after that warning.

[*See* Filing No. 72-2 at 15-16; Filing No. 72-3 at 6-7; Filing No. 72-3 at 10-11; Filing No. 72-4 at

---

[6] The parties discuss whether the security guards had probable cause to arrest Ms. Benson, but the proper inquiry for a malicious prosecution claim is whether they had probable cause to institute an action against her.  *See Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind. Ct. App. 2013). Ms. Benson essentially claims that the security guards' arrest constituted instituting an action against her.  Because neither party presents any evidence of intervening factors leading up to her prosecution for trespass, whether the security guards had probable cause to arrest Ms. Benson versus to institute an action against her is a distinction without a difference.  The Court finds any other potential arguments waived, and will follow the parties' lead, and consider whether the security guards had probable cause to arrest Ms. Benson.  *See Greenlaw v. United States*, 554 U.S. 237, 243-44, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted).

7-8; Filing No. 72-4 at 11-12.]  Ms. Benson argues that there are genuine issues of material fact

regarding whether the security guards had probable cause to arrest her, including:

·   Whether she became "irate and start[ed] yelling or act[ed] unpredictable and
    unstable" while in the management office;

·   Whether she was trespassing because her mother held a lease on her apartment,
    she was a welcome guest of her mother, she was in her mother's apartment, and
    her mother is the only person who could have her removed for trespass; and

·   Whether she was still on the property thirty minutes after receiving the warning
    from the security guard.

[Filing No. 85 at 7-11.]  Ms. Benson argues that RCM, through its employees, then misled the

prosecutor's office by failing to inform it that her mother had a valid lease on her apartment, her

mother was allowed to have guests, and Ms. Benson was arrested when she was physically present

in her mother's apartment.  [Filing No. 85 at 10.]

The facts that Ms. Benson contends are disputed are either not relevant to the probable

cause analysis, or are not disputed based on the record evidence.  First, whether Ms. Benson was

irate and yelling in the management office is irrelevant.  It is undisputed that Mr. Swinkowski

asked the security guards to place Ms. Benson on the trespass list, and the reason she was placed

on the list is irrelevant in terms of the security guards' actions.  Second, it is irrelevant that Ms.

Benson's mother held a lease on her apartment, that Ms. Benson was her welcome guest, and

that Ms. Benson now claims to have been in the apartment when she was arrested.  The

security guards instructed her to leave Keystone property within thirty minutes, and she was

still on Keystone property when they went to her mother's apartment.  Significantly, Ms. Benson

testified in her deposition that she had already exited her mother's apartment and was in the

common part of her mother's building when she was arrested for trespass.  [See Filing No. 85-4 at

49-53.]  Third, although Ms. Benson disputes whether thirty minutes had passed at the time of

her arrest, she presents no admissible evidence that she attempted to leave within that time

- 15 -

period.  [*See* Filing No. 85-4 at 54 (Ms. Benson admitting that she "never checked the time at any time" during the incident).]   Conversely, RCM has presented evidence that over thirty minutes had passed since the security guards warned Ms. Ben-son to leave.  [*See* Filing No. 72-4 at 9; Filing No. 85-6 at 1-2 (Indianapolis Metropolitan Police Department Police Report, indicating that forty-five minutes elapsed between the time the security guards  warned  Ms. Benson to leave the property, and the time they returned to Ms. Benson's mother's apartment and found Ms. Benson still on Keystone property).]   Finally, Ms. Benson argues that RCM, through Mr. Swinkowski and the security guards, withheld certain information from the prosecutor's office.  Whether or not they withheld information does not factor into the analysis of whether the security guards had probable cause to arrest Ms. Benson, and the Court concludes that such probable cause existed.

In short, Ms. Benson has not presented any facts, supported by record evidence, which indicate that the security guards did not have probable cause to arrest her for trespass, thereby instituting an action for trespass against her.  Because lack of probable cause is a necessary element of Ms. Benson's malicious prosecution claim, RCM is entitled to summary judgment on that claim.

### C.  Negligence Claim[7]

Ms. Benson alleges in her Second Amended Complaint that RCM had "an obligation to hire and maintain a competent managerial staff and agents to control the properties they rent to tenants," and to "act in a professional manner that does not violate the property and legal rights of their tenants."  [Filing No. 17 at 13.]  She alleges that RCM "failed to ensure competent staff

---

[7] Ms. Benson clarifies that she only asserts state law claims for malicious prosecution and negli-gence against RCM, and not a claim for false imprisonment.  [*See* Filing No. 85 at 6 (Ms. Benson stating that she "is suing RCM for two state torts under Indiana law, claiming: (1) RCM caused her to be maliciously prosecuted; and (2) RCM was negligent with regard to its staff").]

oversaw their facility at Keystone North Apartments," that Mr. Swinkoski, "as their agent, abused the authority granted to the Deputies to intimidate and silence any concern raised regarding the practices and procedures he enacted as manager of RCM's property," and that RCM "breached its duty to ensure that competent staff would operate their facilities." [Filing No. 17 at 13.]

RCM argues in its Motion for Summary Judgment that Ms. Benson's negligence claim relates to the supervision of Mr. Swinkoski, and that such a claim only succeeds when the employee acts outside the scope of his employment. [Filing No. 71 at 14.] RCM asserts that Ms. Benson's negligence claim fails because Mr. Swinkoski acted within the scope of his employment when he requested that Ms. Benson be placed on the trespass list and directed to leave the property. [Filing No. 71 at 14.] RCM also argues that any negligence by RCM was not the proximate cause of Ms. Benson's damages. [Filing No. 71 at 14-16.]

In response, Ms. Benson states that she agrees that RCM cannot be held liable for negligence because Mr. Swinkowski was acting within the scope of his employment. [Filing No. 85 at 14 ("It is horrifying that Defendant admits its employee, Andrew Swinkoski, was acting within the scope of his employment when he asked [Ms. Benson's mother] to perjure herself on a HUD document, and that he was further acting within the scope of his employment when he retaliated against her for refusing to do so by placing her daughter on the trespass list and having her arrested. Be that as it may, it apparently shields RCM from liability related to its negligent hiring and retention of Swinkoski").] Ms. Benson then changes her negligence claim to focus on RCM's liability for the actions of one of the security guards. [Filing No. 85 at 14-15 ("April Strode had a long disciplinary history with the Marion County Sheriff….She has been suspended without pay and placed [on] leave without pay multiple times since 2009….Even the slightest of care in selecting

their private security guards would have alerted RCM to the fact that Deputy Strode would cause their residents and their residents' guests unnecessary trouble").]

RCM argues on reply that Ms. Benson has not alleged a claim for negligent hiring or supervision of the security guards in her complaint.  [Filing No. 91 at 12-13.]  And even if she had, RCM argues, such a claim would fail because RCM did not hire Deputy Strode, there is no claim for negligent hiring of an independent contractor under Indiana law, and any alleged negligence was not the proximate cause of Ms. Benson's damages.  [Filing No. 91 at 13-15.]

First, the Court finds that Ms. Benson has expressly abandoned her negligence claim based on Mr. Swinkowski's actions.  Instead, she changes course and attempts to re-cast her claim to focus on Deputy Strode's actions.  But any claim based on RCM's hiring or supervision of Deputy Strode in connection with Ms. Benson's negligence claim is raised for the first time in her response to RCM's Motion for Summary Judgment.  [*See* Filing No. 17 at 12-13 (in her Second Amended Complaint, only mentioning RCM's hiring and supervision of Mr. Swinkoski in connection with her negligence claim); Filing No. 66 (not mentioning any claim for negligence based on RCM's hiring or supervision of Deputy Strode in her Statement of Claims).]  A plaintiff "may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).  This principle ensures that the defendant receives the "fair notice" required by the federal rules.  *Id.*  (defendant "had not received the fair notice required by the federal pleading rules" where claims were raised for the first time in response to summary judgment motion); *see also Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402 (7th Cir. 2006) ("[A] response to summary judgment is hardly a timely filing in which to raise an issue"); *Chinn v. Cantrell*, 2006 WL 2927595, *4 (N.D. Ind. 2006) ("[a] claim

raised for the first time in response to a motion for summary judgment is not properly before the court").

Accordingly, the Court will not consider Ms. Benson's argument that RCM negligently hired or supervised Deputy Strode, as she raised this claim for the first time in response to RCM's Motion for Summary Judgment. Because Ms. Benson abandons her negligence claim based on Mr. Swinkowski's actions – the only negligence claim she has properly raised in this litigation – RCM is entitled to summary judgment on her negligence claim.

## V.
### MS. BENSON'S REQUEST TO CERTIFY A QUESTION

As mentioned above, Ms. Benson requests that the Court certify the following question to the Indiana Supreme Court: "Whether the filing of a criminal case by a prosecutor effectively bars a malicious prosecution claim against persons (including police officers) who supplied information that led to the prosecution?" [Filing No. 87.] Because the Court has already found that none of Ms. Benson's claims are viable, and since it did so without considering the issue raised by Ms. Benson's Request to Certify, the Court **DENIES** the request, [Filing No. 87]. The Court also notes that Ms. Benson initiated this lawsuit in federal court, and that if she believed it involved novel issues of Indiana state law – as indicated by her Request to Certify – she could have sought direct review of her claims in state court.

## VI.
### CONCLUSION

Based on the foregoing, the Court **GRANTS** the Sheriff Defendants' Motion for Summary Judgment, [Filing No. 62], **GRANTS** RCM's Motion for Summary Judgment, [Filing No. 70], and **DENIES** Ms. Benson's Request Under Circuit Rule 52 to Certify a Question, [Filing No. 87]. Final judgment shall enter accordingly.

- 19 -

Date: January 12, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**